1 WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juan Gabriel Rodriguez,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV 09-466-PHX-JAT (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES DISTRICT JUDGE:

    This matter comes before this Court upon consideration of a *pro se* Petition for Writ of Habeas Corpus, filed on March 6, 2009, by Petitioner Juan Gabriel Rodriguez, who is confined in the Arizona State Prison. (Doc. #1.) Respondents filed an Answer on June 25, 2009 (Doc. #19), and Petitioner filed a Traverse on July 28, 2009 (Doc. #20).

**BACKGROUND**

**I.    Plea Proceedings**.

    On January 17, 2003, Petitioner plead guilty, in case number 2002-017114, in the Maricopa County Superior Court to the crime of robbery, a class 4 felony, with one prior felony conviction, that being armed robbery, a class 2 felony (case number CR98-00744). (Doc. #19, Exhs. A, Q.) Petitioner plead guilty pursuant to a plea agreement, executed on January 15, 2003. (Doc. #19, Exh. B.) The plea agreement provided that Petitioner would be sentenced to the Department of Corrections and that the state would dismiss its allegation

1 of "remaining prior felony convictions" and "[a]llegation of probation." (<u>Id.</u>) The plea
2 agreement was conditioned upon the Petitioner not having more than 2 prior felony
3 convictions. (<u>Id.</u>) It also set forth the sentencing range for the offense: a presumptive
4 sentence of 4.5 years, a minimum sentence of 3 years and a maximum sentence of 8 years.
5 (<u>Id.</u>)

During the plea colloquy on January 17, 2003, the trial judge asked Petitioner questions relating to Petitioner's competence and the voluntariness of his plea:

The Court: And what's your date of birth?

[Petitioner]: 1-16-78.

The Court: How far have you gone in school?

[Petitioner]: 10th grade.

The Court: Do you read and understand English?

[Petitioner]: Yes.

(Doc. #19, Exh. Q at 3.)

The Court: I have the original of this plea agreement. You have you a copy in front of you. Is that your signature on the second page?

[Petitioner]: Yes.

The Court: Have you had enough time to discuss the plea agreement with Ms. Lopez?

[Petitioner]: Yes.

The Court: Do you understand it?

[Petitioner]: Yes.

The Court: Do you understand that if you plead guilty to this today, you're giving up all the constitutional rights I just described to you?

[Petitioner]: Yes.

The Court: Has anyone forced or threatened you to get you to do that?

[Petitioner]: No.

The Court: Has anyone promised you anything beyond what this written plea agreement says?

[Petitioner]: No.

1 (Id., at 5-6.)

2     The trial court also went over the court's sentencing options under the plea agreement.

3 The Court: The plea agreement says you're going to admit to the charge of robbery, a Class 4 felony, and admit to one of the prior felony convictions. But if you admit to that, the
4 prosecutor is going to dismiss the allegation of any other prior felony and also dismiss the allegation that you were on probation. Is that your understanding of what's going on?

5

[Petitioner]: Yes.

6

The Court: Let's talk about how the crime you're offering to plead guilty to, a class 4 felony,
7 while admitting to one prior felony conviction, how that can be punished under Arizona law. Under Arizona law, you cannot get probation. I have to send you to prison. The presumed
8 period of time would be for four and a half years, but it could be made as short as two and a quarter years or as long as seven and a half years. So basically you're looking at anywhere
9 from two and a quarter to seven and a half years in prison.. . .

10 The Court: Mr. Rodriguez, in that other case number, you're on probation for armed robbery, a Class 2 felony. If you admit to committing this crime on September 24th, 2002, I'm going
11 to find you in violation of probation on that other matter because you're telling me you committed a crime while you were on probation. So that means we'll set this matter for
12 sentencing in the new case and for a disposition hearing – that just means sentencing – in the old case.
13     Here's what could happen on the old case. I could send you to prison. The presumed period of time would be for five years, but it could be made as short as three years or as long
14 as 12 and a half years.
    **If I sent you to prison, I could make the time run concurrently – that means**
15 **together with the time in the new matter – or I could stack it on top of the time in the new matter.**
16     **Before this allegation of being on probation was dropped, I would have been required to stack it on top, and the minimum I could have given you would have been**
17 **five years on the old matter. But now because that allegation was dropped, I don't have to stack it. I still could, but I now have the option of making them run concurrently,**
18 **and I have the option of giving you less than five years. I don't have to. Now the range is anywhere from three years to 12 and a half years, either concurrently with the new**
19 **matter or stacked on top of the new matter. Do you understand that?**

20 [Petitioner]: Yes.

21 The Court: **Are you sure?**

22 [Petitioner]: **Yes, yes.**

23 (Id., at 8-10) (emphasis added.)

24 At the conclusion of the change-of-plea proceeding the court set sentencing and disposition

25 for February 14, 2003, at 8:30 a.m. (Id., at 12.)

26     Sentencing and disposition proceeded on February 28, 2003. (Doc. #19, Exhs. C, R.)

27 Before pronouncing sentence, the court noted that it had "read and considered the written

28 presentence report," the "County Attorney's written recommendation," and "the letters filed

- 3 -

1  by [defense counsel] on February 18, 2003, and the letters [the judge] was handed [the day
2  of sentencing] from an employer of [Petitioner's], . . .and from Carlos Lopez." (Doc. #19,
3  Exh. R at 4.) The trial court also acknowledged, when asked by Petitioner, that the court had
4  reviewed the letters from Petitioner's fiancé. (Id., at 13.)

The court sentenced Petitioner to five years' imprisonment in case number 1998-000744, the probation violation case (armed robbery), and the presumptive term of four-and-one-half-years' imprisonment in case number 2002-07104, the robbery case: the court ordered that the sentence in the robbery case run consecutive to the sentence in the probation violation case. (Doc. #19, Exh. R at 14.) Petitioner was advised that he had 90 days within which to file a Petition for Post-Conviction Relief (hereinafter "PCR"). (Id.)

## II.  PCR Proceedings.

On April 1, 2003, Petitioner filed a Notice of Post Conviction Relief in both cases, requesting appointment of counsel. (Doc. #19, Exh. D.) The court appointed the Office of the Legal Advocate to represent Petitioner, and ordered that the PCR be filed within 60 days of the date that all transcripts had been filed. (Doc. #19, Exh. E at 2.) On September 2, 2003, Petitioner's counsel filed a Notice of Completion of Post-Conviction Review by Counsel; Request for 45 Day Extension of Time to Allow Defendant to File Pro Per Petition for Post-Conviction Relief. (Doc. #19, Exh. F.) In that Notice, Petitioner's counsel noted that she had reviewed all court minutes, the transcripts of the plea/violation hearing and sentencing/disposition proceedings, correspondence from the Petitioner, and correspondence from the Petitioner to the State Bar of Arizona. (Id.)

On September 8, 2003, the trial court ordered that defense counsel remain in an advisory capacity, and that Petitioner file his *pro per* PCR within 45 days. (Doc. #19, Exh. G.) Over three years later, on November 9, 2006, the trial court issued a minute entry granting Petitioner until January 19, 2007 to file a *pro per* PCR, explaining the delay as follows:

> The court has reviewed [Petitioner's] Motion: Court Allow Late Filing for Rule 32. The Rule 32 proceeding was dismissed on November 25, 2003 because defendant failed to file a Pro Per Petition by the October 23 due date. However,

> a review of the CR 1998-000744 file shows that on October 20, 2003, [Petitioner] filed a Motion for Change of Attorney of Record and Request for Extension of Time to File the Petition. The court did not receive a copy of the motion, as required by Rule 4.7, Local Rules of Maricopa County Superior Court, and a copy was not served on the state as required [by the rules]. The court was unaware that [Petitioner] had filed this motion when it dismissed the Rule 32 proceeding. . . .

(Doc. #19, Exh. H.)

Petitioner then filed his *pro per* PCR on December 12, 2006, raising the following claims:

**(1)** His trial counsel was ineffective for (a) failing to keep him informed of his case; (b) misinforming him about the sentencing range he faced if he proceeded to trial; (c) promising him that his sentence if he pled guilty for the 2002 offense would be concurrent with his sentence for the 1998 offense; (d) failing to timely present mitigation letters to the trial court; (e) failing to communicate with the probation officer to prepare the presentence report; and (f) failing to ensure that his sentence was in accordance with his plea agreement.

**(2)** His PCR counsel had been ineffective by (a) failing to send him a copy of his entire record; (b) failing to consult with him to prepare the PCR; (c) failing to interview his trial counsel; and (d) failing to timely respond to his motion for change of attorney.

**(3)** Consecutive sentences violated his double jeopardy rights and his rights under Blakely v. Washington[1] to have a jury find aggravating factors.

**(4)** The trial court violated his due process and equal protection rights by aggravating his sentence, and by imposing an aggravated sentence for "reasons" that were nothing more than an appeal to ethnic or national origin.

(Doc. #19, Exh. I.)

On March 7, 2007, after considering Petitioner's PCR, the State's Response, and Petitioner's Reply, the trial court summarily dismissed Petitioner's PCR. (Doc. #19, Exh. K.) Petitioner then filed a Motion to Set Aside the Dismissal of his PCR, a Motion to Order the Department of Corrections to Allow [Petitioner] Legal Access, and a Motion for Extension

---

[1] 542 U.S. 296 (2004).

of Time to Appeal the Dismissal of [Petitioner's] PCR. (Doc. #19, Exh. N.) On June 6, 2007, the trial court denied Petitioner's Motion to Set Aside the Dismissal of his PCR as untimely, and denied the other two motions summarily. (Id.)

Petitioner mailed his Petition for Review in the Arizona Court of Appeals on June 19, 2007, which was filed by the court on June 26, 2007. (Doc. #19, Exh. O.) Petitioner reurged his (1) double jeopardy and double punishment claims regarding the imposition of consecutive sentences, as well as raising a cruel and unusual punishment claim; (2) his claim that the trial court had violated his due process and equal protection rights, arguing that the judge was biased against him on account of race and national origin, and had failed to respond to motions he had filed; and (3) his claim that he had received ineffective assistance of counsel. (Doc. #19, Exh. O.) The appellate court summarily denied review on March 18, 2009. (Doc. #19, Exh. P.)

### III.  **Habeas Proceedings.**

On March 6, 2008, Petitioner filed his Petition for Writ of Habeas Corpus, setting forth four grounds for relief:

Ground I. Ineffective Assistance of Trial Counsel: trial counsel failed to turn in letters from friends and family to the court on time, failed to contact presentence report writer or correct inaccurate, misleading and unreliable information, failed to update plea agreement causing Petitioner to be sentenced under Double Jeopardy, failed to keep Petitioner informed, and coerced Petitioner to plead guilty by telling Petitioner that the state had agreed to run the sentences concurrent. (Doc. #1.)

Ground II. Ineffective Assistance of PCR Counsel: PCR counsel refused to sent Petitioner a copy of his record, failed to consult with Petitioner, failed to interview trial counsel, failed to investigate claims, and represented Petitioner despite a conflict of interest created by Petitioner's filing a complaint against PCR counsel with the Arizona State Bar. (Doc. #1.)

Ground III. Petitioner's consecutive sentence violated the Double Jeopardy Clause assurance against double punishment. (Doc. #1.)

Ground IV. The trial judge violated Petitioner's Due Process and Equal Protection rights by (1) being biased and prejudiced against Petitioner; (2) passing judgment and sentence based upon a faulty presentence report; (3) allowing a plea bargain to be broken by the parties; and (4) aggravating Petitioner's sentence. (Doc. #1.)

Respondents argue that Petitioner's habeas petition should be dismissed because Petitioner did not fairly present Grounds I and II to the Arizona Court of Appeals, did not fairly present Ground IV to the Arizona state court, and Ground III lacks merit. (Doc. #19.)

**DISCUSSION**

**I.  Exhaustion and Procedural Default.**

A writ of habeas corpus may not be granted unless it appears that a petitioner has properly exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509 (1982). As the Ninth Circuit has explained:

> Before a federal court may consider the merits of a state prisoner's petition for a writ of habeas corpus, the prisoner generally must first exhaust his available remedies.

Smith v. Baldwin, 510 F.3d 1127, 1137-38 (9th Cir. 2007).

To properly exhaust state remedies, a petitioner must "fairly present" his claims to the highest state court, as mandated under state law, in a procedurally appropriate manner. O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999). An Arizona petitioner sentenced to less than the death penalty may exhaust his federal claims by presenting them in a procedurally proper way to the Arizona Court of Appeals, either on direct appeal or in post-conviction proceedings, but he need not seek discretionary review in the Arizona Supreme Court. Crowell v. Knowles, 483 F.Supp.2d 925, 928-30, 933 (D. Ariz. 2007) (following 1989 statutory amendment, Arizona Court of Appeals has jurisdiction over criminal convictions involving less than a death sentence); cf. Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999) (citing pre-1989 statutory amendment); Castillo v. McFadden, 399 F.3d 993, 998 n.3 (9th Cir.), cert. denied 126 S.Ct. 348 (2005).

To properly exhaust claims raised in a state PCR, a Petitioner must file a timely petition for review in the Arizona Court of Appeals. State law provides in relevant part that "[w]ithin thirty days after the final decision of the trial court on the petition for post-conviction relief . . . any party aggrieved may petition the appropriate appellate court for review of the actions of the trial court." Ariz. R. Crim.P. 32.9(c). A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. See Tamalini v. Stewart, 249 F.3d 895, 898-99 (9th Cir. 2001); Bland v. Cal. Dep't of Corrections, 20 F.3d 1469, 1472-73 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc). The exhaustion requirement will not be met where the petitioner fails to fairly present his claims. See Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

The federal court will not consider claims not fairly presented unless the petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray v. Carrier, 477 U.S. 478, 495-96 (1986). To establish cause, a petitioner must establish that some objective factor external to the defense impeded her efforts to comply with the state's procedural rules. Id. The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. Id. To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170 (1982). Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96. To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror

would have found him guilty beyond a reasonable doubt in light of new evidence. Schlup, 513 U.S. at 327; 28 U.S.C. § 2254(c)(2)(B).

If a petition contains claims that were never fairly presented in state court, the federal court must determine whether state remedies remain available to the petitioner. See Harris v. Reed, 489 U.S. 255, 268-270 (1989) (O'Connor, J., concurring); Rose, 455 U.S. at 519-20. Generally, any claim not previously presented to the Arizona courts is procedurally barred from federal review because any attempt to return to state court to properly exhaust a current habeas claim would be "futile." Ariz. R. Crim. P. 32.1, 32.2(a) & (b); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002); State v. Mata, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time barred. Beaty, 303 F.3d at 987; Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

If the court finds that the petitioner would have no state remedy were he to return to the state court, then his claims are considered procedurally defaulted. See Teague v. Lane, 489 U.S. 288, 298-99 (1989); White v. Lewis, 874 F.2d 599, 602-05 (9th Cir. 1989).

**II.    Merits Analysis.**

**AEDPA Standard of Review**

Pursuant to the AEDPA[2], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[2] Antiterrorism and Effective Death Penalty Act of 1996.

- 9 -

proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Taylor, 529 U.S. at 405-06. "A state court's decision can involve an 'unreasonable application' of Federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

**III. Claims.**

**A.   Ineffective Assistance of Trial and PCR Counsel (Grounds I and II)**

Petitioner raised both issues in his PCR. (Doc. #19, Exh. I.) In his Petition for Review to the Arizona Court of Appeals, however, he did not "fairly present" an ineffective assistance of counsel claim. Petitioner asserted generally that he "received the ineffective assistance of counsel, double jeopardy, and [that his] sentence was imposed in violation of the State and Federal Constitution U.S. Amends. V, VI, Ariz. Const. Art 2 sec 10 and 24, and 14th Amendment, causing [him] cruel and unusual punishment." (Doc. #19, Exh. O at 1.) Petitioner also failed to give a factual basis for his claim other than generally to assert that "[he] called Ms. Lopez [trial counsel] and she g;aranteed me that CR 2002-017114 and CR#1998-00749 will run concurrent because the state has agreed and Ms. Lopez told the trial court." (Id., at 2c.)

Petitioner was required to fully present his claims to the Arizona Court of Appeals. See Baldwin v. Reese, 541 U.S. 27, 32-33 (2004). "[A] state prisoner does not 'fairly

- 10 -

present' a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim." Id. (petitioner failed to fairly present his federal ineffective assistance of counsel claim to state courts because his petition to the state supreme court did not alert the court to the alleged federal nature of the claim and did not contain a factual basis supporting it).; Castillo, 399 F.3d at 999 (petitioner failed to fairly present his federal due process claim to the state courts because his appellate brief to the state court of appeals did not describe "both the operative facts and the federal legal theory on which his claim [was] based").

Petitioner has furthermore procedurally defaulted his ineffective assistance of counsel claim, as any attempt to return to state court to exhaust his claim would be futile. See Ariz. R. Crim. P. 32.2(a) (claims that could have been previously raised on direct appeal or in previous PCR proceedings are precluded). The claims would also be time-barred, pursuant to Ariz. R. Crim. P. 32.4(a). O'Sullivan, 526 U.S. at 848 (where defendant had not fairly presented to state courts and where time for doing so had passed, claims were procedurally defaulted).

Petitioner has failed to demonstrate that a miscarriage of justice will result if his claims are denied, or establish cause for his noncompliance with state procedural rules, and actual prejudice, despite having the opportunity to do so in his reply to Respondents' Answer. (Doc. #20.) Grounds I and II of Petitioner's Petition are therefore procedurally defaulted.

Petitioner's claim of ineffective assistance of counsel fails, in any event on the merits. There is no constitutional right to effective assistance of PCR counsel. See Coleman, 501 U.S. at 752. ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (citations omitted). Even if there were such a right, the right would not be cognizable in a habeas petition. 28 U.S.C. §2254(I) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.")

Petitioner has also failed to demonstrate ineffective assistance of trial counsel. To show ineffective assistance of counsel, a defendant must show both that counsel's actions fell below an objective standard of reasonableness and that the defendant suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

As for Petitioner's claim that his attorney failed to timely submit mitigation letters to the trial court, the transcript of the sentencing hearing reveals that the trial court had received and considered letters the attorney had filed ten days earlier and those it received that day. (Doc. #19, Exh. R at 4, 13.) Petitioner therefore can not show that his attorney's actions were objectively unreasonable or that he was prejudiced thereby. Petitioner also claims that his attorney failed to communicate with the probation officer who authored the presentence report, failed to ensure that his sentence was in accordance with his plea agreement, and that she misinformed him that his sentences would be concurrent. The trial court ensured that Petitioner understood his plea agreement and the possible sentence, and sentenced him consistent with the terms of his plea agreement. (Doc. #19, Exhs. B, Q, R.) Thus, Petitioner does not demonstrate that his attorney acted objectively unreasonable or that he suffered prejudice. Petitioner also claims that his attorney failed to keep him informed of his case or give him copies of the evidence the state had against him, but does not offer specifics, and in any event, does not explain how this inaction caused him prejudice.

Lastly, Petitioner claims that his attorney coerced him into his plea by advising him that he would serve at least 14 years if convicted at trial and that his plea agreement guaranteed him he would receive concurrent sentences. (Doc. #1 at 5.) Without the plea agreement, Petitioner faced being sentenced upon conviction for the robbery with two prior felony offenses and an allegation of being on probation at the time the offense was committed, which exposed him to a sentencing range of 10 years (the presumptive sentence which was the required minimum because of the probation allegation) and 15 years. See A.R.S. §13-604(C) (repealed 2008); §13-604.02(B) (renumbered and amended 2008); §13-702.01(E)

(repealed 2008). Upon a conviction in the 2002 robbery case, the trial court would have revoked Petitioner's probation in the 1998 case and would have been required to impose a sentence for that offense consecutive to the 2002 offense. See A.R.S. §13-604.02(B) (renumbered and amended 2008). Thus, Petitioner faced a minimum of 13 years in prison if he went to trial and was convicted.

Though Petitioner's attorney may have been off by one year in her calculation of the minimum sentence Petitioner faced upon conviction at trial, the fact remains that Petitioner could have received a far lesser sentence by virtue of his plea agreement, and in fact received a lesser sentence (9½ years). Also, the trial court made clear to Petitioner during the change of plea proceeding that the court could run the sentences in the two cases consecutively, and Petitioner acknowledged that possibility and even responded affirmatively when the court asked him: "[a]re you sure?" (Doc. #19, Exh. Q at 8-10.) Petitioner does not demonstrate that his attorney's performance in this regard fell below an objective standard of reasonableness, or that even if it did, he suffered any prejudice as a result.

**B.     Consecutive Sentences (Ground III)**

Petitioner claims that consecutive sentences violated his right to be free from being placed in double jeopardy for the same offense. (Doc. #1 at 7.) He raised this issue in his PCR and in his Petition for Review to the Arizona Supreme Court, and thus he has exhausted this claim. The prohibition against double jeopardy contained in the Fifth Amendment to the United States Constitution however, prohibits successive punishments and successive prosecutions for the same criminal offense. United States v. Dixon, 509 U.S. 688, 696 (1993). It does not apply in Petitioner's circumstances, that of being sentenced to consecutive sentences for separate offenses. The prohibition against double jeopardy does not preclude a sentence for an offense with a prior conviction, and separately a sentence for the prior conviction. See Witte v. United States, 515 U.S. 389, 400 (1995) (recidivism statutes do not violate the prohibition against double jeopardy). Petitioner's claim has no merit.

**C.     Equal Protection and Due Process Rights (Ground IV)**

In his PCR, Petitioner claimed that his Equal Protection and Due Process rights were violated by the trial court when the court imposed consecutive sentences. He did not set forth any additional facts in support of this claim of constitutional error. In his Petition for Review to the Arizona Court of Appeals, Petitioner did not frame his consecutive sentences complaint as an Equal Protection or Due Process violation. In his habeas petition, Petitioner claims that the trial court violated his Equal Protection and Due Process rights by (1) being biased and prejudiced against Petitioner; (2) passing judgment and sentence based upon a faulty presentence report; (3) allowing a plea bargain to be broken by the parties; and (4) aggravating Petitioner's sentence. (Doc. #1 at 8.) Petitioner has not properly exhausted this claim.

Petitioner has furthermore procedurally defaulted this claim, as any attempt to return to state court to exhaust his claim would be futile. See Ariz. R. Crim. P. 32.2(a) (claims that could have been previously raised on direct appeal or in previous PCR proceedings are precluded). The claims would also be time-barred, pursuant to Ariz. R. Crim. P. 32.4(a). O'Sullivan, 526 U.S. at 848 (where defendant had not fairly presented to state courts and where time for doing so had passed, claims were procedurally defaulted).

Petitioner has failed to demonstrate that a miscarriage of justice will result if his claims are denied, or establish cause for his noncompliance with state procedural rules, and actual prejudice, despite having the opportunity to do so in his reply to Respondents' Answer. (Doc. #20.) Petitioner's claim fails, in any event on the merits.

(1) Petitioner's claim of judicial bias.

Petitioner claims that the trial court violated his due process and equal protection rights in denying his PCR because the judge was biased because she was also the sentencing judge. Defendants do have due process rights to an impartial judge. In re Murchison, 349 U.S. 133, 136 (1955); accord, Withrow v. Larkin, 421 U.S. 35, 46 (1975). Judges are presumed to be fair and impartial. 421 U.S. at 47. Judicial bias can only be shown by demonstrating judicial opinions derived from an extrajudicial source or "such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555

(1994). To that end, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Id.

Petitioner has failed to present any evidence demonstrating that the judge was biased. Furthermore, it is not improper for the sentencing judge to also rule on a PCR; in fact, Arizona Rules of Criminal Procedure require it. See Ariz.R.Crim.P. 32.4(e) ("The proceeding shall be assigned to the sentencing judge where possible. If it appears that the sentencing judge's testimony will be relevant, that judge shall transfer the case to another judge.") Based upon the allegations contained in the PCR, no testimony from the sentencing judge would have been relevant. The judge was therefore not required to transfer the case, and could properly rule upon the PCR.

(2) Petitioner's claim regarding an inaccurate presentence report.

Petitioner claims that his presentence report was inaccurate, leading the trial court to sentence him improperly. He does not explain sufficiently what information contained in the report was in error, other than to suggest that the author of the report was not accurately informed of the terms of the plea agreement. As previously discussed however, Petitioner was sentenced in accordance with the law and the terms of the plea agreement. This claim has no merit.

(3) Petitioner's claim regarding broken plea agreement.

Petitioner claims that the trial judge allowed the parties to breach the plea agreement. As set forth above, the terms of the plea agreement were not violated, and during the plea colloquy the court made clear to the Petitioner that the sentences for the two offenses could run consecutively and that the trial court would have that discretion. Petitioner was also asked during his plea colloquy whether or not "anyone promised [him] anything beyond what th[e] written plea agreement says," and Petitioner responded no. (Doc. #19, Exh. Q at 6.) This claim has no merit.

Petitioner also appears to be claiming that the trial court's consideration of the fact that he was on probation at the time of the robbery offense was in violation of the plea agreement provision that the "allegation of probation" be dismissed. (Doc. #19, Exh. B ¶3.) The trial

1  court explained to Petitioner however, during the plea colloquy the effect of the dismissal of
2  that allegation:

> Before this allegation of being on probation was dropped, I would have been required to stack it on top, and the minimum I could have given you would have been five years on the old matter. But now because that allegation was dropped, I don't have to stack it. I still could, but I now have the option of making them run concurrently, and I have the option of giving you less than five years.

(Doc. #19, Exh. Q, at 9.)

The trial judge then listed several reasons, in addition to the fact that Petitioner was on probation at the time of the new offense, to justify a consecutive sentence:

> The reasons for the consecutive sentences are this new robbery occurred on September 24, 2002, while you were on probation for an armed robbery. It was committed while you were in the country illegally after being formally deported. You also have one other prior armed robbery conviction. On that other prior armed robbery conviction, you were sent to prison for four years. This new crime still occurred. Quite frankly, I simply have to protect society.

(Doc. #19, Exh. R at 15.)

The sentence imposed was lawful and not in contravention of the terms of Petitioner's plea agreement.

(4) Petitioner's claim that his sentence was improperly aggravated.

Petitioner was sentenced to the presumptive term for both offenses. (Doc. #19, Exh. R at 14.) To the extent Petitioner is claiming that his sentence violates the tenants of <u>Blakely</u>, his claim has no merit, because <u>Blakely</u> has no applicability in the context of the propriety of imposing consecutive sentences. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 542 U.S. at 301. The statutory maximum, is in the presumptive sentence. <u>Id.</u> at 303-04. This claim has no merit.

## CONCLUSION

Petitioner's claims I, II, and IV are procedurally defaulted. Those claims, in any event, and claim III, fail on their merits. Petitioner has not demonstrated that the State court decision finding that Petitioner had raised no colorable claims was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme

Court; or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**IT IS THEREFORE RECOMMENDED:**

That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. The objections shall not exceed 15 pages in length. Thereafter, the parties have ten days within which to file a response to the objections. The responses shall not exceed 10 pages in length. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 19th day of October, 2009.

_____
Michelle H. Burns
United States Magistrate Judge